ORIGINAL

CLARE E. CONNORS   #7936
United States Attorney
District of Hawaii

MICHAEL D. NAMMAR
MICAH SMITH
MARK A. INCIONG      CA BAR #163443
Assistant U.S. Attorneys
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii   96850
Telephone:   (808) 541-2850
Facsimile:   (808) 541-2958
Emails:      Michael.Nammar@usdoj.gov
             Micah.Smith@usdoj.gov
             Mark.Inciong@usdoj.gov

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 1 3 2022

at 2 o'clock and 50 min. ℓ M
John A. Mannle, Clerk
LS
CC: DKW/ FILER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR. NO. 19-00099-04 DKW |
| | ) |
| Plaintiff, | ) MEMORANDUM OF PLEA |
| | ) AGREEMENT |
| vs. | ) |
| | ) DATE:      September 7, 2022 |
| LANCE L. BERMUDEZ,      (04) | ) TIME:      8:00 a.m. |
| aka "Hammah," | ) JUDGE:   Hon. Derrick K. Watson |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OF PLEA AGREEMENT**

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the

UNITED STATES OF AMERICA, by its attorney, the United States Attorney for

the District of Hawaii, and the defendant, LANCE L. BERMUDEZ, and his

attorney, BIRNEY B. BERVAR, Esq., have agreed upon the following:

## THE CHARGES

1.      The defendant acknowledges that he has been charged in the Second

Superseding Indictment with violating Title 18, United States Code, Sections 2,

924(c)(1)(A)(i) and (ii), 1951, 1958, 1962(d); and Title 21, United States Code,

Sections 846, 841(b)(1)(A), 841(b)(1)(C), and 841(b)(1)(D).

2.      The defendant has read the charges against him contained in the

Second Superseding Indictment, and those charges have been fully explained to

him by his attorney.

3.      The defendant fully understands the nature and elements of the crimes

with which he has been charged.

## THE AGREEMENT

4.      The defendant will enter voluntary pleas of guilty to Counts 1, 16 and

18 of the Second Superseding Indictment, which charge him with participating in a

racketeering conspiracy, referred to in the Superseding Indictment as the "Miske

Enterprise, in violation of Title 18, United States Code, Section 1962(d);

conspiracy to distribute and possess, with intent to distribute, 500 grams or more of

a mixture or substance containing a detectable amount of methamphetamine, in

2

violation of Title 21, United States Code, Sections 846, 841(a)(1) and

841(b)(1)(A); and, Hobbs Act robbery, in violation of Title 18, United States Code,

Section 1951.   In return, the government agrees to move to dismiss Counts 7, 17,

19, 20 and 21 of the Second Superseding Indictment and the First Superseding

Indictment as to the defendant after sentencing.

5.      The defendant agrees that this Memorandum of Plea Agreement shall

be filed and become part of the record in this case.

6.      The defendant enters these pleas because he is, in fact, guilty of

participating in a racketeering conspiracy, referred to in the Second Superseding

Indictment as the "Miske Enterprise, in violation of Title 18, United States Code,

Section 1962(d); conspiracy to distribute and possess, with intent to distribute, 500

grams or more of a mixture or substance containing a detectable amount of

methamphetamine, in violation of Title 21, United States Code, Sections 846,

841(a)(1) and 841(b)(1)(A); and, Hobbs Act robbery, in violation of Title 18,

United States Code, Section 1951, as charged in Counts 1, 16 and 18 of the Second

Superseding Indictment, and he agrees that his pleas are voluntary and not the

result of force or threats.

3

## PENALTIES

7.      The defendant understands that the penalties for the offenses to which

he is pleading guilty include:

a.      As to Count 1, a term of imprisonment of up to 20 years; a fine

of up to $250,000; plus a term of supervised release of at least one year but not

more than 3 years.

b.      As to Count 16, a term of imprisonment of not less than 10

years and not more than life; a fine of up to $10,000,000; plus a term of supervised

release of not less than 5 years and up to life.

c.      As to Count ~~17~~ 18, a term of imprisonment of up to 20 years; a

fine of up to $250,000, plus a term of supervised release of 3 years.

d.      In addition, the Court must impose a $100 special assessment as

to each count to which the defendant is pleading guilty.   The defendant agrees to

pay $100 for each count to which he is pleading guilty to the District Court's

Clerk's Office, to be credited to said special assessments, before the

commencement of any portion of sentencing.   The defendant acknowledges that

failure to make such full advance payment in a form and manner acceptable to the

prosecution will allow, though not require, the prosecution to withdraw from this

Agreement at its option.

4

e.    **Forfeiture.**

Title 18, United States Code, Section 1963 authorizes forfeiture of any

interest the defendant has acquired or maintained in violation of Title 18, United

States Code, Section 1962; of any interest in, security of, claim against, or property

or contractual right of any kind affording a source of influence over, any enterprise

which the defendant established, controlled, conducted, or participated in the

conduct of, in violation of Title 18, United States Code, Section 1962; and any

property constituting, or derived from, any proceeds obtained directly or indirectly

from racketeering activity in violation of Title 18, United States Code, Section

1962.

Any firearm(s) or ammunition is subject to forfeiture pursuant to 18 U.S.C.

§ 924(d).

## FACTUAL STIPULATIONS

8.    The defendant admits the following facts and agrees that they are not

a detailed recitation, but merely an outline of what happened in relation to the

charges to which the defendant is pleading guilty:

a.    From at least in or about 2015 and continuing up to and

including August, 2018, LANCE L. BERMUDEZ, aka "Hammah"

("BERMUDEZ"), the defendant, and others known and unknown, were members

5

and associates of the "Miske Enterprise."   Members and associates of the Miske

Enterprise operated principally under the direction and protection of Michael J.

Miske, Jr., who used his power over members and associates of the Miske

Enterprise, his reputation for violence in the community, and the various corporate

entities under his control to enrich the members and associates of the Miske

Enterprise and to protect their criminal activities.

   b. The Miske Enterprise, including its leadership, membership,

and associates, constituted an "enterprise" as that term is defined in Title 18,

United States Code, Section 1961(4), that is, a group of individuals and entities

associated in fact.   The Miske Enterprise was engaged in, and its activities

affected, interstate and foreign commerce.   The Miske Enterprise operated within

the District of Hawaii and elsewhere and constituted an ongoing organization

whose members and associates functioned as a continuing unit for a common

purpose of achieving the objectives of the Miske Enterprise.

   c. Beginning no later than in or about 2015, BERMUDEZ and

others known and unknown, being persons employed by and associated with the

Miske Enterprise, willfully and knowingly combined, conspired, confederated, and

agreed together and with each other to violate the racketeering laws of the United

States, namely, Title 18, United States Code, Section 1962(d), that is, to conduct

6

and participate, directly and indirectly, in the conduct of the affairs of the Miske

Enterprise through a pattern of racketeering activity, as that term is defined in Title

18, United States Code, Sections 1961(1) and 1961(5).

          d.     The racketeering activity to which BERMUDEZ and others

agreed included:   (1) murder for hire, as alleged in Count 7 of the Second

Superseding Indictment; (2) arson; (3) the felonious trafficking of controlled

substances as alleged in Count 16 of the Second Superseding Indictment; (3) acts

involving robbery and firearms relating to interference with interstate commerce as

alleged in Counts 17, 18, 19, 20 and 21 of the Second Superseding Indictment; and

(4) attempted murder.

          e.     **Murder for Hire**.

      BERMUDEZ, along with other members of the Miske Enterprise, was

offered contracts to commit and/or facilitate murder by Michael J. Miske, Jr. and

engaged in attempts to commit those murders as requested by Miske, though no

one was killed as a result of BERMUDEZ's efforts.

      For example, in or about 2016, BERMUDEZ, along with Michael J.

Miske, Jr., John B. Stancil, Jacob "Jake" Smith, Wayne Miller, Harry K. Kauhi and

Dae Han Moon, participated in a murder-for-hire conspiracy in which "Victim-1"

was the target.   Miske placed the murder contract on Victim-1 because Miske

7

believed Victim-1 had cooperated with law enforcement and provided information about Miske.

Miske contacted Smith and then met with him and BERMUDEZ at the Kamehameha Shopping Center in Honolulu.   At the meeting, Miske expressed his interest in having Victim -1 killed and indicated he would pay $60,000 for Victim-1's murder.   BERMUDEZ agreed to take the job and met with John B. Stancil a couple of days later in Waimanalo, Hawaii where Stancil showed BERMUDEZ where Victim–1 lived.

BERMUDEZ then enlisted Dae Han Moon to assist and, on multiple occasions, laid in wait outside Victim-1's home in the early morning hours waiting for Victim-1 to come outside.   BERMUDEZ and Moon were armed with firearms and were prepared to shoot and kill Victim-1 once he left the residence.   However, Victim-1 never came outside while they were present.   BERMUDEZ was eventually called off and made no further attempts to commit the murder.

### f.   Arson.

BERMUDEZ, along with other members of the Miske Enterprise, committed arsons in furtherance of the Enterprise.   Specifically, in July 2016, Miske Enterprise member Jason Yokoyama, aka "Jay", called BERMUDEZ asking him to come to the "M" nightclub.   BERMUDEZ drove to the "M" and met with

Yokoyama who told BERMUDEZ he needed him to get rid of a van.

BERMUDEZ agreed and drove with Yokoyama to Hawaii Kai where Yokoyama

pointed out the van, a white/cream colored Toyota Sienna, parked on the street.

After they found the van, the pair drove back to the "M" where BERMUDEZ got

into his own car with Dae Han Moon and drove back to Hawaii Kai.

Once there, BERMUDEZ "broke" the ignition to start the van and drove it to

Ewa Beach followed by Moon in another car.   BERMUDEZ parked the van under

a bridge overpass where he and Moon set the van on fire and fled the scene.

Afterward, they returned to the M nightclub where BERMUDEZ told Yokoyama

where he had taken the van and burned it.   Yokoyama then paid BERMUDEZ

$3,500.

Cell site data indicated that a cellular phone known to be used by

BERMUDEZ was present on the east side of Oahu, the area where Yokoyama took

BERMUDEZ to locate the white Sienna van, on July 30, 2016, the same date

Johnathan Fraser was last seen.   The cell data further showed that same phone

traveled to the west side of Oahu that same night in the area where BERMUDEZ

set the van on fire and where Honolulu Police found the van engulfed in flames.

Phone toll records also show that within a 61-minute period on the evening

of July 30, 2016, Miske exchanged 29 text messages with a cell phone number

ending in "0964."   That "0964" number, which BERMUDEZ identified as

Yokoyama's "burner" phone, was in contact with BERMUDEZ's phone at 12:15.

a.m. on July 31, 2016.   The "0964" number was saved in BERMUDEZ's phone

contacts as "Jay" and saved in Miske's iCloud account as "Jason2."

~~Also, after the October 27, 2015 armed robbery of the BNVK store,~~ *BBB* **KS**

~~described in subparagraph (h) below, BERMUDEZ set fire to the stolen getaway~~ *LB*

~~vehicle.~~

*mm*

## g. **Offenses Involving the Felonious Trafficking of Controlled Substances.**

Beginning no later than 2016 and continuing until at least in or about August

2018, BERMUDEZ conspired with other members and associates of the Enterprise

to distribute and possess, with intent to distribute, controlled substances including

methamphetamine.   Many times, the drugs distributed were obtained as the result

of BERMUDEZ and other Enterprise members robbing other drug dealers.   Text

messages obtained from BERMUDEZ's cell phone confirm his involvement.

BERMUDEZ typically carried a firearm while conducting his drug transactions.

For example, in 2016, BERMUDEZ, Jacob "Jake" Smith, Ashlin Akau and

another individual committed an armed robbery of a known methamphetamine

dealer after setting up a meeting with the dealer under the ruse they wanted to buy

drugs from him.   After robbing the dealer of two pounds of methamphetamine, the

10

group met at Smith's house and divided the drugs among themselves with the intention of each to further distribute the methamphetamine to others.

Similarly, after the 2016 robbery of Victim-4, described below, BERMUDEZ took and possessed his share of the stolen methamphetamine with the intent to further distribute the drugs to another person(s).

### h.   Offenses Involving Robbery and Firearms Relating to Interference with Interstate Commerce.

On multiple occasions in 2015 and 2016, BERMUDEZ, along with other members of the Miske Enterprise, engaged in and/or facilitated armed robberies. For example, on October 27, 2015, BERMUDEZ, John B. Stancil and two other individuals committed an armed robbery of the BVNK store in Honolulu.   While BERMUDEZ waited outside as the getaway driver, the rest of the group entered the store wearing ski masks and stolen long-sleeved Sheriff's t-shirts.   At least one individual was armed with a gun and, using the threat of force, the group took the cash register from the store believing it contained a large amount of money.   The group fled in a white Acura Integra driven by BERMUDEZ, ~~who later burned and abandoned the car.~~   Honolulu Police also recovered a vehicle the next day after it was reported as stolen along with a Sheriff's uniform shirt, badge and several long-sleeved Sheriff's t-shirts that were inside the vehicle.

Also, in or about 2016, BERMUDEZ, along with Jacob "Jake" Smith, Ashlin Akau, Norman L. Akau, III, John B. Stancil, Harry K. Kauhi and at least one other individual participated in the robbery of Victim-4, a suspected drug dealer, who was believed to be in possession of a large quantity of methamphetamine.   The group travelled in separate vehicles and forced the car in which Victim-4 was a passenger to stop on North School Street in Honolulu. BERMUDEZ, Smith and Stancil were in one vehicle, a black BMW 3-series sedan, driven by BERMUDEZ.   Norman L. Akau III, who arrived in another vehicle, was dressed to impersonate an undercover police officer and held a walkie-talkie and flashed a prop badge as he ordered Victim-4 out of the car in which he was riding.   Everyone present who participated in the robbery was armed with a gun except for Ashlin Akau.   Most were also wearing masks.   Using the threat of force, the group obtained several pounds of methamphetamine from Victim-4. After the robbery, BERMUDEZ and the rest of the group all met at the Waimanalo district park and divided the drugs amongst themselves.

On May 14, 2016, BERMUDEZ, along with John B. Stancil, Kaulana Freitas and several other individuals, participated in the set up and robbery of an individual they believed to be a local drug dealer in possession of a large amount of cash.   After Stancil and Freitas lured the individual to the Hawaii Kai boat ramp

12

at Maunalua Bay in Honolulu, masked and armed Enterprise members arrived and assaulted him, including BERMUDEZ who pistol whipped him in the head, then robbed the victim of his car keys and approximately $7,000 in cash.   One assailant also pulled a chain off the victim's neck before fleeing the scene in the victim's vehicle.

The individual, who sustained minor cuts to his forehead, both elbows and right knee as a result of the assault and robbery, went to Miske's house in Kailua later that day to complain directly to Miske about being set up and robbed by Stancil and the others.   Miske later chastised the assailants for committing the assault at the Hawaii Kai boat ramp at Maunalua Bay, an area Miske associated with his deceased son.

Also in 2016, Enterprise member Hunter Wilson told Jacob "Jake" Smith and others that a drug dealer, Victim–5, was in possession of drugs and would be a suitable target for a robbery.   Wilson also provided information as to which door to use for entry into Victim-5's house.   On August 24, 2016, BERMUDEZ, Smith and a third male arrived at the home wearing masks and brandishing firearms. When the men could not immediately determine which door to enter, Smith called Wilson who identified the door after which BERMUDEZ, Smith and the third male

made entry, without permission, into the house and, under the threat of force, robbed Victim–5 of marijuana and the prescription drug, Xanax.

Although Miske did not direct the above described robberies, BERMUDEZ and the others involved were emboldened by their association with Miske and the Miske Enterprise and relied on the protection they could count on as Enterprise members.

### i. **Attempted Murders**.

In the early morning hours of August 3, 2016, a group of people were standing on the sidewalk near School and Ahonui Streets in Honolulu.   A witness reported in a written statement to police that a black car drove up to the group and the driver's window lowered before gunshots rang out.   BERMUDEZ, the driver of the car, fired the shots at the group striking two victims in the legs. BERMUDEZ drove a black Infiniti vehicle at the time.

On August 27, 2016, BERMUDEZ and Dae Han Moon arrived outside the Xclusive Bar and Lounge in Honolulu in order to retaliate on behalf of a friend who was beaten at the bar by a group of people earlier that night.   Witnesses reported after the male who was beaten fled the scene, a black vehicle drove up and individuals in the car began firing gunshots.   BERMUDEZ and Moon both fired shots from inside BERMUDEZ's black Infiniti resulting in one victim being

14

struck in the leg.   Cell site location data placed BERMUDEZ's phone in the area at the time of the shooting.   Text messages found on BERMUDEZ's phone also showed him communicating with the friend who was beaten shortly before the shooting.

On August 31, 2016, BERMUDEZ and Steven Donohue went looking for a homeless individual who was living in a tent on Kuwili Street in the Kalihi area of Honolulu.   BERMUDEZ drove the pair in his black Infiniti and both men were masked when they arrived at Kuwili Street.    After not being able to find the person they were looking for, ~~BERMUDEZ urged~~ Donohue ~~to fire~~ *fired* at a group of individuals standing on the street.    ~~Donahue did so and~~ The gunshot struck one man, who was inside a tent, in the ear.   The intended victim later admitted to police that he owed a $100 methamphetamine debt to Donohue.

While Miske did not direct any of the above shootings, BERMUDEZ and the others involved were so emboldened at the time by their association with Miske and the Miske Enterprise - particularly in light of the fact that BERMUDEZ had, as described above, very recently accepted the murder contract of Victim -1 on behalf of Miske and disposed of the white Sienna van that BERMUDEZ believed, after the fact, was used in the abduction of Johnathan Fraser - that BERMUDEZ relied on the protection he could count on from Miske as an Enterprise member.

15

9.     Pursuant to CrimLR 32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charges to which the defendant is pleading guilty adequately reflect the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

## SENTENCING STIPULATIONS

10.     Pursuant to CrimLR 32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of the defendant in connection with this matter:

a.     As of the date of this agreement, it is expected that the defendant will enter a plea of guilty prior to the commencement of trial, will truthfully admit his involvement in the offense and related conduct, and will not engage in conduct that is inconsistent with such acceptance of responsibility.   If all of these events occur, and the defendant's acceptance of responsibility continues through the date of sentencing, a downward adjustment of 2 levels for acceptance of responsibility will be appropriate.   *See* U.S.S.G. § 3E1.1(a) and Application Note 3.

b.     The United States Attorney agrees that the defendant's agreement herein to enter into a guilty plea constitutes notice of intent to plead guilty in a timely manner, so as to permit the government to avoid preparing for trial as to the defendant.   Accordingly, the United States Attorney anticipates moving in the Government's Sentencing Statement for a one-level reduction in sentencing offense level pursuant to Guideline § 3E1.1(b)(2), if the defendant is otherwise eligible.   The defendant understands that notwithstanding its present intentions, and still within the Agreement, the prosecution reserves the rights (1) to argue to the contrary in the event of receipt of new information relating to those issues, and (2) to call and examine witnesses on those issues in the event that either the United States Probation Office finds to the contrary of the prosecution's intentions or the Court requests that evidence be presented on those issues.

11.     The parties agree that notwithstanding the parties' Agreement herein, the Court is not bound by any stipulation entered into by the parties but may, with the aid of the presentence report, determine the facts relevant to sentencing.   The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

17

12.     The parties represent that as of the date of this agreement there are no material facts in dispute.

**APPEAL/COLLATERAL REVIEW**

13.     The defendant is aware that he has the right to appeal his conviction and the sentence imposed.   The defendant knowingly and voluntarily waives the right to appeal, except as indicated in subparagraph "b" below, his conviction and any sentence within the Guidelines range as determined by the Court at the time of sentencing, and any lawful restitution or forfeiture order imposed, or the manner in which the sentence, restitution, or forfeiture order was determined, on any ground whatsoever, in exchange for the concessions made by the prosecution in this Agreement.   The defendant understands that this waiver includes the right to assert any and all legally waivable claims.

a.     The defendant also waives the right to challenge his conviction or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that the defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

b.      If the Court imposes a sentence greater than specified in the guideline range determined by the Court to be applicable to the defendant, the defendant retains the right to appeal the portion of his sentence greater than specified in that guideline range and the manner in which that portion was determined and to challenge that portion of his sentence in a collateral attack.

c.      The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

## FINANCIAL DISCLOSURE

14.     In connection with the collection of restitution or other financial obligations that may be imposed upon him, the defendant agrees as follows:

a.      The defendant agrees to fully disclose all assets in which he has any interest or over which he exercises control, directly or indirectly, including any assets held by a spouse, nominee, or third party.   The defendant understands that the United States Probation Office (USPO) will conduct a presentence investigation that will require the defendant to complete a comprehensive financial statement.   To avoid the requirement of the defendant completing financial statements for both the USPO and the government, the defendant agrees to truthfully complete a financial statement provided to the defendant by the United

States Attorney's Office.   The defendant agrees to complete the disclosure statement and provide it to the USPO within the time frame required by the United States Probation officer assigned to the defendant's case.   The defendant understands that the USPO will in turn provide a copy of the completed financial statement to the United States Attorney's Office.   The defendant agrees to provide written updates to both the USPO and the United States Attorney's Office regarding any material changes in circumstances, which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances.   The defendant's failure to timely and accurately complete and sign the financial statement, and any written update thereto, may, in addition to any other penalty or remedy, constitute the defendant's failure to accept responsibility under U.S.S.G § 3E1.1.

        b.     The defendant expressly authorizes the United States Attorney's Office to obtain his credit report.   The defendant agrees to provide waivers, consents, or releases requested by the United States Attorney's Office to access records to verify the financial information, such releases to be valid for a period extending 90 days after the date of sentencing.   The defendant also authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the USPO.

c.      Prior to sentencing, the defendant agrees to notify the Financial

Litigation Unit of the U.S. Attorney's Office before making any transfer of an

interest in property with a value exceeding $1,000 owned directly or indirectly,

individually or jointly, by the defendant, including any interest held or owned

under any name, including trusts, partnerships, and corporations.

## IMPOSITION OF SENTENCE

15.    The defendant understands that the District Court in imposing

sentence will consider the provisions of the Sentencing Guidelines.   The defendant

agrees that there is no promise or guarantee of the applicability or non-applicability

of any Guideline or any portion thereof, notwithstanding any representations or

predictions from any source.

16.    The defendant understands that this Agreement will not be accepted or

rejected by the Court until there has been an opportunity by the Court to consider a

presentence report, unless the Court decides that a presentence report is

unnecessary.   The defendant understands that the Court will not accept an

agreement unless the Court determines that the remaining charges adequately

reflect the seriousness of the actual offense behavior and accepting the Agreement

will not undermine the statutory purposes of sentencing.

## WAIVER OF TRIAL RIGHTS

17.    The defendant understands that by pleading guilty he surrenders

certain rights, including the following:

a.    If the defendant persisted in a plea of not guilty to the charges

against him, then he would have the right to a public and speedy trial.   The trial

could be either a jury trial or a trial by a judge sitting without a jury.   The

defendant has a right to a jury trial.   However, in order that the trial be conducted

by the judge sitting without a jury, the defendant, the prosecution, and the judge all

must agree that the trial be conducted by the judge without a jury.

b.    If the trial is a jury trial, the jury would be composed of twelve

laypersons selected at random.   The defendant and his attorney would have a say

in who the jurors would be by removing prospective jurors for cause where actual

bias or other disqualification is shown, or without cause by exercising peremptory

challenges.   The jury would have to agree unanimously before it could return a

verdict of either guilty or not guilty.   The jury would be instructed that the

defendant is presumed innocent, and that it could not convict him unless, after

hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

c.      If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the defendant's guilt beyond a reasonable doubt.

d.      At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the defendant.   The defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them.   In turn, the defendant could present witnesses and other evidence on his own behalf.   If the witnesses for the defendant would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

e.      At a trial, the defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

18.      The defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph.   The defendant's attorney has explained those rights to him, and the consequences of the waiver of those rights.

## USE OF PLEA STATEMENTS

19.      If, after signing this Agreement, the defendant decides not to plead guilty as provided herein, or if the defendant pleads guilty but subsequently makes

23

a motion before the Court to withdraw his guilty plea and the Court grants that motion, the defendant agrees that any admission of guilt that he makes by signing this Agreement or that he makes while pleading guilty as set forth in this Agreement may be used against him in a subsequent trial if the defendant later proceeds to trial.   The defendant voluntarily, knowingly, and intelligently waives any protection afforded by Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence regarding the use of statements made in this Agreement or during the course of pleading guilty when the guilty plea is later withdrawn.   The *only* exception to this paragraph is where the defendant fully complies with this Agreement but the Court nonetheless rejects it. Under those circumstances, the United States may not use those statements of the defendant for any purpose.

20.    The defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of the defendant's conduct regarding the charges against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

## COOPERATION

21.    The defendant agrees that he will fully cooperate with the United States.

24

     a.     The defendant agrees to testify truthfully at any and all trials, hearings, or any other proceedings at which the prosecution requests him to testify, including, but not limited to, any grand jury proceedings, trial proceedings involving co-defendants and others charged later in the investigation, sentencing hearings, and related civil proceedings.

     b.     The defendant agrees to be available to speak with law enforcement officials and representatives of the United States Attorney's Office at any time and to give truthful and complete answers at such meetings, but he understands he may have his counsel present at those conversations, if he so desires.

     c.     The defendant agrees he will not assert any privilege to refuse to testify at any grand jury, trial, or other proceeding, involving or related to the crimes charged in this Second Superseding Indictment or any subsequent charges related to this investigation, at which the prosecution requests him to testify.

     d.     The defendant agrees that his sentencing date may be delayed based on the government's need for the defendant's continued cooperation, and agrees not to object to any continuances of the defendant's sentencing date sought by the United States.

e.     Pursuant to Section 1B1.8(a) of the Sentencing Guidelines, the prosecution agrees that self-incriminating information provided pursuant to this Agreement to cooperate will not be used in determining the applicable guideline range, except as may be provided in this Agreement and under Section 1B1.8(b) of the Sentencing Guidelines.

22.     In the event that the defendant does not breach any of the terms of this Agreement but the Court nonetheless refuses to accept the Agreement after the defendant has made statements to law enforcement authorities or representatives of the United States Attorney's Office pursuant to this Agreement, the prosecution agrees not to use said statements in its case-in-chief in the trial of the defendant in this matter.   The defendant understands that this does not bar the use of information and evidence derived from said statements or prohibit the use of the statements by the prosecution in cross-examination or rebuttal.

23.     Pursuant to Guidelines § 5K1.1 and Rule 35(b) of the Federal Rules of Criminal Procedure, the prosecution may move the Court to depart from the Guidelines on the ground that the defendant has provided substantial assistance to authorities in the investigation or prosecution of another person who has committed an offense.   The defendant understands that:

26

a. The decision as to whether to make such a request or motion is entirely up to the prosecution.

b. This Agreement does not require the prosecution to make such a request or motion.

c. This Agreement confers neither any right upon the defendant to have the prosecution make such a request or motion, nor any remedy to the defendant in the event the prosecution fails to make such a request or motion.

d. Even in the event that the prosecution makes such a request or motion, the Court may refuse to depart from the Guidelines or to impose a sentence below the minimum level established by statute.

24. The defendant and his attorney acknowledge that, apart from any written proffer agreements, if applicable, no threats, promises, agreements or conditions have been entered into by the parties other than those set forth in this Agreement, to induce the defendant to plead guilty.   Apart from any written proffer agreements, if applicable, this Agreement supersedes all prior promises, agreements or conditions between the parties.

25. To become effective, this Agreement must be signed by all signatories listed below.

26.    Should the Court refuse to accept this Agreement, it is null and void

and neither party shall be bound thereto.


AGREED:


_____    Dated:  9/1/22
KENNETH SORENSON
Chief, Criminal Division
District of Hawaii


_____    Dated:  9-1-22
MICHAEL D. NAMMAR
MICAH SMITH
MARK A. INCIONG
Assistant U.S. Attorneys


_____    Dated:  9 - 7 - 22
LANCE L. BERMUDEZ
Defendant


_____    Dated:  9/2/22
BIRNEY B. BERVAR
Attorney for Defendant


28